IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CURTIS R. CRISP,              ) | |
|         Plaintiff,                    ) | |
|                                            ) | CIV. NO. 1:11-CV-205 |
| v.                                        ) | (COLLIER/CARTER) |
|                                            ) | |
| MICHAEL J. ASTRUE,         ) | |
| Commissioner of Social Security, ) | |
|         Defendant.                  ) | |

### REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1)     The plaintiff's Motion for Judgment on the Pleadings (Doc. 13)

(2)     The defendant's Motion for Summary Judgment (Doc. 15)

(3)     The plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 17)

For the reasons stated herein, I RECOMMEND the Commissioner's decision be

**REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

### Application for Benefits

Plaintiff filed an application for Supplemental Security Income benefits in August 2009 (Tr. 110-18). The agency denied this application initially and upon reconsideration (Tr. 38, 39,

1

40, 41, 43, 44, 45, 46-48, 49-52). Plaintiff thereafter timely pursued and exhausted his administrative remedies, including a hearing before an administrative law judge (ALJ). The ALJ issued an unfavorable decision (Tr. 7-22), and the Appeals Council denied Plaintiff's request for review (Tr. 1-6). The ALJ's final hearing decision is ripe for review under 42 U.S.C. § 405(g).

Standard of Review - Findings of ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he cannot return to his former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have

2

decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision of December 10, 2010, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 21, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq*).

2. The claimant has the following severe impairments: learning disorder/Asperger's disorder; obsessive compulsive disorder and schizoid personality disorder (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can only understand, remember and carry out simple one and two step instructions, cannot deal with the general public except on rare occasions, can have only occasional contact with co-workers and supervisors, and can adapt only to infrequent workplace changes.

3

5. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

6. The claimant was born on _____ ___, 1977 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from July 21, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-17).

## Issue

Plaintiff raises one issue:

> Whether there is substantial evidence to support the ALJ's decision and whether the ALJ gave improper weight to non-treating medical sources.

## Relevant Facts

Vocational Information and Findings of the ALJ

Plaintiff was 32 years old at the time of his alleged onset (Tr. 38). Plaintiff has a high school education, but no past relevant work (Tr. 16). Plaintiff alleged he became disabled in July 2009 (Tr. 25). After a review of the written evidence and the testimony at the hearing, the ALJ found Plaintiff had severe learning disability/Asperger's Syndrome, obsessive compulsive

4

disorder, and schizoid personality disorder, but did not have an impairment or combination of impairments listed in, or medically equal to one listed in the regulations (Tr. 13). The ALJ found Plaintiff's subjective complaints of pain were not fully credible (Tr. 16).

The ALJ concluded Plaintiff retained the residual functional capacity (RFC) to perform the physical exertional requirements of medium work, but limited Plaintiff to understanding, remembering, and carrying out simple one and two step instructions, no dealings with the general public (except on rare occasions), only occasionally having contact with co-workers or supervisors, and adapting to only infrequent workplace changes (Tr. 14). Based upon vocational expert testimony, the ALJ found Plaintiff could perform various jobs within the medium level of work activity (Tr. 17, 33). Such jobs include price marker, kitchen helper, and cleaner (Tr. 17, 33). Based on these conclusions, the ALJ found Plaintiff not disabled as defined in the Social Security Act.

Relevant Medical Evidence

Plaintiff alleges disability due to severe anxiety/social phobia, obsessive compulsive disorder, and Asperger's syndrome. The record includes an October 12, 2009 report of a psychological evaluation by Arthur Stair II, M.A. and Charlton Stanley, Ph.D., Supervising Psychologist. Plaintiff was referred for the evaluation by the Disability Determination Section of the State of Tennessee. Plaintiff, age 32, came to the evaluation with his mother on October 8, 2009. Plaintiff reported school was okay but he had special classes. He reported trouble with reading and math but that his moods were okay and he was happy most of the time yet frustrated sometimes when he could not read well. Plaintiff reported he usually only drives short distances.

5

Case 1:11-cv-00205-CLC-WBC   Document 18   Filed 04/23/12   Page 5 of 16   PageID #: 79

His mother reported she did not think his emotions and mood were bad but he "had secluded from other people." He stays in his small bedroom most of the time. Plaintiff was not currently taking any medication, had not seen a doctor since he was eleven years of age and had never seen a psychiatrist or psychologist. The evaluator reviewed Plaintiff's personal and family history, academic and vocational history and legal history. His full scale IQ was assessed to be within the mid-borderline intellectual functioning range. His achievement scores ranged from a standard score of 55 to a standard score of 75. Some degree of learning disabilities was apparent. Plaintiff was administered 10 subtests of the WAIS-IV. His general cognitive ability was within the borderline range of intellectual functioning. Verbal reasoning abilities were in the low average range, better than 16% of his peers. His nonverbal reasoning ability was in the low-average range, better than 10% of his peers, his ability to sustain attention, concentrate and exert mental control was in the borderline range, performing better than 3% of his peers.

The Plaintiff's ability to make personal, social, and vocational adjustments were assessed based on the evaluation and testing. Plaintiff appeared capable of understanding simple information or directions with the ability to put it to full use in a vocational setting. His ability to comprehend and implement multistep complex instructions was at least moderately impaired given his borderline intellectual functioning and learning disabilities. Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was at least moderately impaired based on borderline intellectual functions and learning disabilities. His social relationships were severely impaired as he reported withdrawal from others due to schizoid personality disorder. A GAF of 54 was assessed but Plaintiff was able to manage his

6

own funds. The diagnostic impression was learning disorder NOS, schizoid personality disorder and borderline intellectual functioning (Tr. 217-222).

In March 2010, Dr. Ziegler conducted an in-home assessment of Plaintiff, where he opined that, "This patient's chronic conditions require frequent management and monitoring in order to prevent avoidable decline in condition." Dr. Ziegler also commented that he went to Plaintiff's house for the evaluation because, "in my professional judgment the risks to the patient's health of an office visit outweigh the benefits and the home visit is therefore medically-necessary in lieu of an office visit." Plaintiff "spends [the] majority of time in his room" and was diagnosed with Agoraphobia without panic attacks which is "not adequately controlled." He also reported mixed hyperlipidemia and tobacco use not adequately controlled. In his examination he noted Plaintiff was in no acute distress. He reported his orientation to be alert and oriented to person, place, and time, and further reported as to Mood and Affect that the patient was alert and cooperative. The report begins, "Mr. Crisp is a very pleasant 33 year old male whom I have been following." However, the testimony of Plaintiff indicated Dr. Ziegler was the family physician who was at the home to treat another family member (Tr. 28). There is no other evidence of treatment by this physician. Dr. Zeigler recommended a psychiatric consultation and encouraged Plaintiff to walk at least 3 times a week (Tr. 262-267).

Plaintiff obtained treatment from Dr. Solomon at Behavioral Health Associates in May 2010, where he was diagnosed with Asperger's Disorder, social phobia, attention deficit hyperactivity disorder, and obsessive-compulsive disorder with poor insight. Dr. Solomon's notes indicate that Plaintiff exhibited "a history consistent of a pervasive developmental disorder perhaps Asperger's type" noting inattentiveness and "delusional thoughts about people's

7

intentions both in a work setting and in public in general." Plaintiff's mother reported delayed speech as an infant, hyperactivity as a youth, a brief history in the teenage years of breaking and entering and drug use, ongoing refusal to drink after anyone, and that she had to stop trying to get Plaintiff to work (Tr. 268-281).

Dr. Solomon's notes also indicate numerous jobs of short duration, hours spent playing video games, not liking crowds, periodic visual/olfactory hallucinations, significant obsessive symptoms such as not liking different foods touching each other on a plate, inability to eat in public restaurants, and rarely getting out of the house. Plaintiff would typically "easily quit things . . . often jumps to paranoid conclusions . . . and would likely deteriorate in a work-setting." The residual functional capacity evaluation shows marked limitations in the ability to understand, remember, and carry out detailed instructions (Tr. 252-253).

When Plaintiff was seen for the initial evaluation by Dr. Solomon, he noted Plaintiff to be a 33 year old with long term psychiatric problems, but with no previous psychiatric treatment, who presented to be evaluated in hopes to find out what kind of problems he had, what treatment might be available and wanting to get help getting disability benefits (Tr. 273). The initial evaluation consisted of history intake and interviewing Plaintiff and his mother (Tr. 273-75). Dr. Solomon noted Plaintiff's affect was generally "matter of fact" and Plaintiff described his mood as "generally good" although his mother said he angers quickly when confronted (Tr. 279). Plaintiff denied hallucinations but demonstrated significant obsessive-compulsive symptoms. Dr. Solomon noted Plaintiff does not like to have food touching on his plate, does not like the texture of some foods, only eats with a special fork, does not like to eat in public places, and has to do some checking of doors. Dr. Solomon noted Plaintiff could engage in most activities of

8

daily living, but does not like to leave his house.  He reported he only leaves his house 4-5 times a year and prefers to have others deal with the public (Tr. 274).  Plaintiff does not have any friends, but is able to function "fairly well" with his family although he gets distracted easily and quits things easily and would likely deteriorate quickly in a work-like setting (Tr. 274-75).  Dr. Solomon prescribed a treatment plan including medication, a trial of Zoloft, and a recommendation that Plaintiff and his family visit the AIMS center to "help with socialization and possibly work" (Tr. 281).

Dr. Solomon saw Plaintiff again on July 12, 2010.  According to those session notes, Dr. Solomon diagnosed Plaintiff with Asperger's disorder, social phobia, and obsessive-compulsive disorder.

Finally, the record contains two January 14, 2010 Psychiatric Review Technique forms by Horace F. Edwards, Ph.D.  In the first assessment which assessed the period from October 1, 1997 to March 4, 1999, Dr. Edwards indicated there was no medical or functional evidence found within the specified time period (Tr. 224-236).  In the second assessment, also dated January 14, 2010, he found mild restrictions of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace (Tr. 248). In the consultant notes section of his report he refers to the GAF of 54, the learning disability and Schizoid personality.  Activities of daily living include driving short distances, interacting with family, interacting on computer, mowing the lawn, removing trash, chores, chats and playing games on line.  Dr. Edwards noted no prescription for psychotropic medication.  In his functional capacity assessment Dr. Edwards concludes Plaintiff has the ability to understand, remember, and carry out simple one and two step instructions, has the ability to sustain attention

9

and concentration for periods of at least two hours in a typical 8 hour day but cannot deal with the general public. He found Plaintiff has the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors and can adapt to infrequent workplace changes and can travel to unfamiliar places (Tr. 254).

Analysis

Plaintiff argues there is no substantial evidence to support the ALJ's decision and the ALJ gave improper weight to non-treating medical sources. On the other hand, the Commissioner argues it is the Plaintiff's burden of proving he is entitled to benefits and that the ALJ properly gave significant weight to the consulting psychologist. For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy.

When the ALJ's findings are not supported by substantial evidence, or are legally unsound, the reviewing court should reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994). I cannot say the evidence of disability is overwhelming and that no evidence exists on the other side, therefore I am recommending remand rather than reversal.

Plaintiff alleges disability due to severe anxiety/social phobia, obsessive compulsive disorder, and Asperger's syndrome. The following medical records were before the ALJ:

(1) an October 8, 2009 consultative examination by state agency psychologist Arthur Stair, M.A.; (2) a January 14, 2010 opinion of a state agency psychologist Horace F. Edwards, Ph. D., who reviewed the record as it then existed; (3) a report of an examination from a doctor's

home visit on March 24, 2010 by Donald Ziegler, M.D.; and (4) treatment notes and diagnoses from Allen L. Solomon, M.D. of Behavioral Health Associates from May 10, 2010, June 22, 2010 and July 10, 2010.

The ALJ, in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms and in making his findings on the credibility of Plaintiff's statements, relied heavily upon the findings of state agency psychologist Arthur Stair, M.A. (Tr. 15).

Plaintiff was referred for the evaluation by the Disability Determination Section of the State of Tennessee. Plaintiff came to the evaluation with his mother on October 8, 2009. Plaintiff reported school was okay but he had special classes. He reported trouble with reading and math but that his moods were okay and he was happy most of the time yet frustrated sometimes when he could not read well. Plaintiff reported he usually only drives short distances.

His mother reported she did not think his emotions and mood were bad but he "had secluded from other people." He stays in his small bedroom most of the time. Plaintiff was not currently taking any medication, had not seen a doctor since he was eleven years of age and had never seen a psychiatrist or psychologist (Tr,217). Mr. Stair reviewed Plaintiff's personal and family history, academic and vocational history and legal history. His full scale IQ was assessed to be within the mid-borderline intellectual functioning range. His achievement scores ranged from a standard score of 55 to a standard score of 75. Some degree of learning disabilities was apparent. Plaintiff was administered 10 subtests of the WAIS-IV. His general cognitive ability was within the borderline range of intellectual functioning. Verbal reasoning abilities were in the low average range, better than 16% of his peers. His nonverbal reasoning ability

11

Case 1:11-cv-00205-CLC-WBC   Document 18   Filed 04/23/12   Page 11 of 16   PageID #: 85

was in the low-average range, better than 10% of his peers, his ability to sustain attention, concentrate and exert mental control was in the borderline range, performing better than 3% of his peers (Tr. 218-220).

The Plaintiff's ability to make personal, social, and vocational adjustments were assessed based on the evaluation and testing. Plaintiff appeared capable of understanding simple information or directions with the ability to put it to full use in a vocational setting. His ability to comprehend and implement multistep complex instructions was at least moderately impaired given his borderline intellectual functioning and learning disabilities. Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was at least moderately impaired based on borderline intellectual functions and learning disabilities. His social relationships were severely impaired as he reported withdrawal from others due to schizoid personality disorder. A GAF of 54 was assessed but Plaintiff was able to manage his own funds. The diagnostic impression was learning disorder NOS, schizoid personality disorder and borderline intellectual functioning (Tr. 221-222).

The ALJ next turned to the January 14, 2010 review of the record by state agency psychologist Horace F. Edwards, Ph. D. In referring to this report the ALJ notes:

> . . . the claimant could understand, remember, and carry out simple one and two step instructions; had the ability to sustain attention and concentration for periods of at least two hours in a typical eight hour day; could not deal with the general public; had the ability to relate appropriately with peers and supervisors and maintain appropriate social behaviors; and could adapt to infrequent workplace changes and could travel to unfamiliar places (Exhibit 5F). Dr. Edwards' opinion is consistent with the record as a whole. As such, I grant great weight to his opinion.

The ALJ found this opinion consistent with the record as a whole and granted great

12

weight to the opinion (Tr. 15).

Next, the ALJ pointed to the opinion of Donald Zeigler, M.D.   Referring to his examination, the ALJ made the following findings:

> On March 24, 2010, Donald Zeigler, M.D. met with the claimant at his home. Dr. Zeigler stated that he had been following the claimant and stated that the claimant's chronic conditions require frequent management and monitoring in order to prevent avoidable decline in his condition. Dr. Zeigler diagnosed the claimant with agoraphobia without panic attacks, mixed hyperlipidemia, and tobacco use disorder; Dr. Zeigler recommended a psychiatry consult and encouraged the claimant to walk three times at least three times week. Dr. Zeigler scheduled a follow up appointment on March 24, 2011 (Exhibit 8F). I note Dr. Zeigler did not place any restrictions on the claimant nor did he prescribe any medication to the claimant. At the hearing, the claimant testified Dr. Zeigler was at his home to treat his father and that he only met Dr. Zeigler on one occasion. Dr. Zeigler is therefore not a treating physician and from his own treatment notes indicates he would only treat the claimant once a year at the most. Therefore, I grant his opinion no weight.

(Tr. 15).

Finally the ALJ reviewed the May 5, 2010 intake interview of a treating psychiatrist, Dr. Allen Solomon.   First, the ALJ remarks that the quality of the record is poor and the majority of the record illegible.   The ALJ was able to make out part of the record because he deals with it in his opinion as follows:

> However, claimant indicated he needed to see what was "wrong" with him and he stated he was trying to get help with his disability claim (Exhibit 9F). On July 12, 2010, the claimant returned to Dr. Solomon. On said date, Dr. Solomon diagnosed the claimant with Asperger's disorder, social phobia, and obsessive-compulsive disorder.   I note there are no other notes from the session or explanation of how Dr. Solomon arrived at the claimant's diagnosis. Dr.

13

> Solomon has had very limited contact with the claimant as
> he has only had two sessions with the claimant, one of
> which was the initial intake session. He also failed to
> administer any psychological tests which would confirm
> claimant's alleged learning disorder or the diagnosis he
> assessed (Exhibit 9F). As such, I grant his opinion some
> weight to the extent it is consistent with my residual
> functioning capacity assessment.

(Tr. 16).

The ALJ finally concludes his residual functional capacity assessment is "supported by the state agency psychologist's opinion, Mr. Stair's consultative evaluation of the claimant and my own thorough review of the record as a whole" (Tr. 16).

A Plaintiff has an expectation that a denial of benefits will be based upon and complete and fair review of the medical record. (*See Reed v. Astrue*, 2010 WL 386739 (W.D. Ky.)  A failure to consider the record as a whole undermines the Secretary's conclusion.  (*Allen v. Califano*, 613 F. 2d 139, 145 (6th Cir. 1980) (citing *Futernick V. Richardson*, 484 F. 2d 647 (6th Cir. 1973).  I cannot conclude that there has been a complete and fair review of the medical record as a whole in this case for two reasons. First, the opinion of the state agency psychologist, Horace F. Edwards, was based on a review of the record prior to the time of the evaluations and opinions given by Dr. Zeigler and the treating psychiatrist, Allen Solomon.  Nevertheless, the ALJ gave that opinion great weight (Tr. 15).  Second, the report and opinion of the treating Psychologist was of such quality, the ALJ stated, a majority of it was illegible.  I agree with the ALJ that the quality of the report is poor.  However, I have reviewed it and am able to read the vast majority of it.  I am attaching an Exhibit to this Report and Recommendation in which I set out what I believe to be the content of that report. Once again, the opinion of Dr. Edwards was given without a review of either the report of Dr. Zeigler or Dr. Solomon, who were the only

14

treating physicians in the record.   I recognize that Dr. Zeigler might well not be considered to be entitled to any deference as a treating physician due to his apparent limited contact with Plaintiff but I conclude the Plaintiff is entitled to have the entire record be considered before a decision is made on the issue of his ability to work.

I concede that the ALJ's review of the entire record may or may not result in a different conclusion. On remand, the ALJ should seek a better copy of the medical record from Dr. Solomon, including any further medical treatment of Plaintiff, and obtain the opinion of a state agency reviewing Psychologist after a review of the entire medical record, including the reports of Dr. Zeigler and Dr. Solomon.   There is no way for me to know what weight the ALJ might have given to the report of Dr. Solomon because I do not know what part of the report he was able to read, only that he could not read the majority of it. Further the state agency reviewing Psychologist reviewed neither Dr. Zeigler's nor Dr. Solomon's report, the only treating physicians in the record.   Generally, it is the province of the ALJ to weigh conflicting medical evidence and make his decision regarding the credibility of the plaintiff.   *King v. Heckler,* 742 F.2d 968, 974 (6 th Cir. 1984). The weighing of this evidence is the province of the ALJ, not mine.

## Conclusion

For the foregoing reasons, I conclude the Commissioner's decision is not supported by

substantial evidence. Accordingly, I RECOMMEND[1] that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 13) seeking reversal be DENIED in part and GRANTED in part to the extent it can be said to seek remand.

2. Defendant's motion for summary judgment (Doc. 15) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

S/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers,* 829 F.2d 1370 (6th Cir. 1987).